

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FEDERAL TRADE COMMISSION and
PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State
of New York,

       Plaintiffs,

       v.

HYLAN ASSET MANAGEMENT, LLC, et al.,

       Defendants.

Case No.: 1:18-cv-00710-EAW

**STIPULATED ORDER FOR
PERMANENT INJUNCTION AND
MONETARY JUDGMENT AS TO
FRANK A. UNGARO, JR. AND
WORLDWIDE PROCESSING
GROUP, LLC**

---

Plaintiffs the Federal Trade Commission ("Commission") and the People of the State of

New York, by the Attorney General of the State of New York ("NY AG"), commenced this civil

action on June 26, 2018 by filing a complaint (the "Complaint") for temporary, preliminary, and

permanent injunctive relief and other equitable relief pursuant to Section 13(b) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 814(a) of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692l(a), N.Y. Executive Law § 63(12), and

N.Y. General Business Law Article 22-A, § 349 and Article 29-H, § 601.  Plaintiffs amended

their complaint on August 27, 2018 and named additional defendants.  Plaintiffs and Defendants

Frank A. Ungaro, Jr. and Worldwide Processing Group, LLC, stipulate to the entry of this

Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all

matters in dispute in this action between them.

       THEREFORE, IT IS ORDERED as follows:

### FINDINGS

1.    This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive and abusive Debt-
Collection practices, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the
FDCPA, 15 U.S.C. §§ 1692-1692p, and N.Y. General Business Law Article 22-A § 349
and Article 29-H § 601.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as
specifically stated in this Order. Only for purposes of this action, Defendants admit the
facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act,
28 U.S.C. § 2412, concerning the prosecution of this action through the date of this
Order, and agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the
validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      **"Corporate Defendant"** means Worldwide Processing Group, LLC, and by
whatever other names it may be known, and its successors and assigns, as well as
any subsidiaries, affiliates, and any fictitious business entities or business names
created or used by these entities, or any of them.

B.      **"Credit Repair Service"** means selling, providing, or performing any service (or
representing that such service can or will be sold, provided, or performed) through
the use of any instrumentality of interstate commerce or the mails, in return for
the payment of money or other valuable consideration, for the express or implied
purpose of (i) improving any consumer's credit record, credit history, or credit

rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

C.    "**Debt**" means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

D.    "**Debt-Collection Activities**" means any activities of a Debt Collector to collect or attempt to collect, directly or indirectly, a Debt owed or due, or asserted to be owed or due.

E.    "**Debt Collector**" means any Person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any Debts, or who regularly collects or attempts to collect, directly or indirectly, Debts owed or due or asserted to be owed or due another.  The term also includes any creditor who, in the process of collecting its own Debts, uses any name other than its own which would indicate that a third Person is collecting or attempting to collect such Debts.  The term also includes any Person to the extent such Person collects or attempts to collect any Debt that was in default at the time it was obtained by such Person.

F.    "**Debt Portfolio**" means spreadsheets, databases, tables, lists, or any other compilation of  information describing Debts or purported Debts owed by individuals to a business.

G.    "**Defendants**" means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

H.    "**Financial Product or Service**" means any product, service, plan, or program represented, expressly or by implication, to:

3

1.  provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, an extension of consumer credit;

2.  provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, Credit Repair Service; or

3.  provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, any Secured or Unsecured Debt Relief Product or Service.

I.  **"Hylan Defendants"** means Andrew Shaevel, Jon E. Purzhansky, Bobalew Management Corporation; Bobalew, LLC; 6P Management Corporation; 6P, LLC; Hylan Asset Management, LLC; and by whatever other names they may be known, and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these individuals, these entities, or any of them.

J.  **"Individual Defendant"** means Frank A. Ungaro, Jr.

K.  **"Investigation,"** for purposes of this Order, includes objectively evaluating the circumstances and considering information, including an assessment of the relevance, reliability, accuracy, integrity, and completeness of such information, to determine whether a debtor owes a Debt in the amount asserted by Defendants while collecting on Debt. The information Defendants shall assess in an Investigation, where applicable, shall include but not be limited to:

1.  the information that Defendants received, directly or indirectly, from the credit originator or the creditor to whom the Debt is owed, such as: (a) the debtor's credit application, (b) the credit contract between the debtor and

the credit originator, (c) documents with the current or former name, address, and telephone phone number of the debtor, (d) documents with the debtor's account number, in whole or in  part, and account statements, (e) documents with the date and amount of any payments, (f) documents with the date and outstanding balance at charge-off, and (g) Debt Collector's notes;

2.     the information that Defendants received from data aggregators, data brokers, consumer reporting agencies, skip tracers, and other third-parties, such as: (a) documents with the current or former name, address, and telephone number of the  debtor, (b) documents with consumer-report information, including credit scores and updates to the information in credit reports, and (c) the scoring of the Debt through the use of a predictive model;

3.     the information that Defendants created or maintained in collecting on the Debt, such as Debt Collectors' notes; and the information Defendants received from the debtor denying, disputing, or challenging the claim that the debtor owes the Debt or the amount of the Debt, such as: (a) documents with the debtor's current or former name, address, and  telephone number, (b) receipts or other evidence of payment from the credit  originator, the creditor to whom the Debt is owed, or a Debt Collector, (c) canceled checks, bank account statements, credit card statements, and other documents evidencing payment, and (d) a consumer report relevant to the disputed item.

L.   "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

M.   "**Secured or Unsecured Debt Relief Product or Service**" means, with respect to any mortgage, loan, Debt, or obligation between a Person and one or more secured or unsecured creditors or Debt Collectors, any product, service, plan, or program represented, expressly or by implication, to: (A) negotiate, settle, or in any way alter the terms of payment or other terms of the mortgage, loan, Debt, or obligation, including but not limited to, a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or Debt Collector; (B) stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession; (C) obtain any forbearance or modification in the timing of payments from any secured or unsecured holder of any mortgage, loan, Debt, or obligation; (D) negotiate, obtain, or arrange any extension of the period of time within which the Person may (i) cure his or her default on the mortgage, loan, Debt, or obligation, (ii) reinstate his or her mortgage, loan, Debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, Debt, or obligation or redeem a dwelling or other collateral; (E) obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or (F) negotiate, obtain, or

6

arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, Debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder. The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a Person's application for the mortgage, loan, Debt, or obligation.

N.    "**SQ Capital Defendants**" means Joel Jerome Tucker, SQ Capital, LLC, JT Holdings, Inc., and HPD LLC, and by whatever other names they may be known, and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by this individual, these entities, or any of them.

## ORDER

### I.

### PROHIBITION AGAINST UNLAWFUL COLLECTION PRACTICES

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Debt-Collection Activities, are permanently restrained and enjoined from:

A.    Using any false, deceptive, or misleading representation or means, including, but not limited to, falsely representing, directly or indirectly, expressly or by implication:

1.    the character, amount, or legal status of any Debt;

2.    that a consumer is delinquent on a Debt;

7

    3.      that Defendants have the authority to collect any Debt;

    4.      that the consumer has a legal obligation to pay Defendants;

    5.      that the law allows them to contact third parties without limitation; or

    6.      any other material fact;

B.     Communicating with Persons other than the consumer, the consumer's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, the attorney of the Debt Collector, the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator for purposes other than acquiring location information about the consumer, without having obtained directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a post judgment judicial remedy;

C.     Threatening to take an action that Defendants cannot legally take;

D.     Failing to disclose in the initial communication with a consumer that Defendants are Debt Collectors attempting to collect a Debt and that any information obtained will be used for that purpose, or failing to disclose in subsequent communications that the communication is from a Debt Collector;

E.     Failing to provide consumers, either in the initial communication or a written notice sent within five days after the initial communication, with the information required by Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a), including information about the Debt and consumers' rights to dispute the Debt; and

8

F.     Violating any provision of the FDCPA, 15 U.S.C. §§ 1692-1692p (a copy of

which is attached hereto as Attachment A), including, but not limited to, Section

807, 15 U.S.C. § 1692e.

## II.

## PROHIBITED MISREPRESENTATIONS RELATING TO
## FINANCIAL PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any Financial Product or Service, are permanently restrained and

enjoined from misrepresenting or assisting others in misrepresenting, expressly or by

implication, any material fact, including but not limited to:

A.     the terms or rates that are available for any loan or other extension of credit;

B.     any aspect of any Credit Repair Service, including but not limited to (a) any

Person's ability to improve or otherwise affect a consumer's credit record, credit

history, or credit rating or ability to obtain credit; or (b) that any Person can

improve any consumer's credit record, credit history, or credit rating by

permanently removing negative information from the consumer's credit record,

credit history, or credit rating, even where such information is accurate and not

obsolete;

C.     any aspect of any Secured or Unsecured Debt Relief Product or Service, including

but not limited to, the amount of savings a consumer will receive from

purchasing, using, or enrolling in such Secured or Unsecured Debt Relief Product

or Service; the amount of time before which a consumer will receive settlement of

that consumer's Debts; or the reduction or cessation of collection calls;

D.     that a consumer will receive legal representation; and

E.     any particular outcome or result from a Financial Product or Service, including

that a Financial Product or Service is guaranteed, assured, highly likely or

probable, or very highly likely or probable.

### III.

### PROHIBITION AGAINST MISREPRESENTATIONS
### RELATING TO ANY PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service, are permanently restrained and enjoined from

misrepresenting or assisting others in misrepresenting, expressly or by implication, any material

fact, including but not limited to:

A.     that any Person is an attorney or affiliated or associated with an attorney or law

firm;

B.     the nature or terms of any refund, cancellation, exchange, or repurchase policy,

including, but not limited to, the likelihood of a consumer obtaining a full or

partial refund, or the circumstances in which a full or partial refund will be

provided to the consumer;

C.     that any Person is affiliated with, endorsed or approved by, or otherwise

connected to any other Person, government entity, or other public or commercial

entity, including a court system; and

D.    the nature, expertise, position, or job title of any Person who provides any product or service; and

E.    any other fact material to a consumer's decision to purchase any good or service, such as (1) the total costs to purchase, receive, or use, and the quantity of, any good or service; (2) any material restriction, limitation, or condition to purchase, receive, or use any good or service; or (3) any material aspect of the performance, efficacy, nature, or central characteristics of any good or service.

**IV.**

**<u>PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS</u>**

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Debt-Collection Activities, are permanently restrained and enjoined from:

A.    Representing, expressly or by implication, that a debtor owes a Debt, that Defendants have authority to collect on a Debt, or the amount of a Debt, when, at the time of the representation, Defendants do not possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true, including but not limited to instances where:

1.    Debtors have disputed or attempted to dispute the validity or accuracy of the Debt and Defendants have failed to review information substantiating the amount of Debt, or failed to consider the debtors' disputes, prior to continuing collection; or

11

2.    Defendants have knowledge or reason to believe that a specific Debt Portfolio contains unreliable data but fail to obtain information substantiating the accuracy of the data prior to collecting; and

B.    Failing, after a debtor denies, disputes, or challenges the Defendants' claim that the debtor owes the Debt or owes the Debt in the amount asserted, to:

1.    within fourteen (14) days after the denial, dispute, or challenge, or when the Debt is next reported to a consumer reporting agency, if earlier: report the Debt as disputed or request deletion of that item from the debtor's credit reporting file by any credit reporting agency to which the Debt was reported by Defendants; and

2.    promptly after the denial, dispute, or challenge:

(a)    cease collection, and not sell, provide, or transfer the Debt to any Person or entity other than the creditor to whom the Debt is owed; or

(b)    commence and complete, within thirty (30) days after a debtor denies, disputes, or challenges Defendants' claim that the debtor owes the Debt or that it owes the Debt in the amount asserted, an Investigation of the denial, dispute, or challenge, *provided that* Defendants shall not be required to investigate any denial, dispute, or challenge more than once unless the debtor provides to Defendants or the Defendants otherwise acquire or obtain information, data, or documentation that was not considered in any prior Investigation. Defendants shall notify the debtor within

five (5) business days if the denial, dispute, or challenge is not investigated under this proviso.

(i)     If the results of the Investigation show that the debtor owes the Debt in the amount asserted, Defendants, within five (5) days of reaching their conclusion, shall provide verification of the Debt to the debtor, inform the debtor of their conclusion, and provide the basis for it, after which they may continue collection. If the debtor continues to dispute the Debt, nothing in this order supersedes the requirement of § 623(a)(3) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a)(3), that Defendants convey the dispute when furnishing information on the Debt to any consumer reporting agency.

(ii)     If the results of the Investigation show that the debtor does not owe the Debt or the Debt cannot be verified, Defendants shall, within five (5) days of reaching their conclusion: (a) inform the debtor of their conclusion and the basis for it; (b) request that each consumer reporting agency to which the Debt has been reported delete the Debt from the debtor's credit reporting file; (c) cease collection; and (d) not sell, provide, or transfer the Debt to any Person or entity other than the creditor to whom the Debt is allegedly owed.

(iii)   If the results of the Investigation show that the debtor does owe the Debt but not in the amount that Defendants asserted, Defendants shall, within five (5) days of reaching their conclusion: (a) inform the debtor of their conclusion and the basis for it; and (b) provide to each consumer reporting agency to which the Debt has been reported any correction to the reported information that is necessary to make the information provided by Defendants accurate, after which they may continue collection.

*Provided that*, if the debtor initiates contact with Defendants by any means, Defendants may respond to the debtor prior to the completion of the Investigation.

*Provided further that*, nothing in this Section affects Defendants' obligation to comply with all applicable provisions of the FDCPA and the FCRA.

*Provided further that*, nothing in this Section prohibits Defendants from requiring debtors who deny, dispute, or challenge a Debt on the grounds of fraud or identity theft to do so in writing, so long as Defendants clearly and conspicuously disclose these requirements to debtors. Once Defendant receives an identity theft report, the requirements of § 623(a)(6)(B) of the FCRA, 15 U.S.C. § 1681s-2(a)(6)(B), apply.

**V.**

## PROHIBITION ON DISCLOSURE OF INACCURATE CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service, are permanently restrained and enjoined from

furnishing information relating to any consumer to any consumer reporting agency,

notwithstanding any alternative compliance methods that may be generally available under

Section 623(a)(1)(C) of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(1)(C), while

knowing or having reason to believe that the information is inaccurate.

## VI.

## **CONSUMER INFORMATION**

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order are permanently restrained and enjoined from directly or

indirectly:

A.     failing to provide sufficient consumer information to enable the Plaintiffs to

efficiently administer consumer redress. If representatives of either Plaintiff

request in writing any information related to redress, Defendants must provide it,

in the form prescribed by the Plaintiff, within 14 days;

B.     disclosing, using, or benefitting from consumer information, including the name,

address, telephone number, email address, social security number, other

identifying information, or any data that enables access to a consumer's account

(including a credit card, bank account, or other financial account), that any

Defendant obtained directly or indirectly from any of the Hylan Defendants or

any of the SQ Capital Defendants; and

C.    for customer information that any Defendant is prohibited from disclosing, using, or benefitting from by Section VI.B, above, failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order.

**Provided, however**, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VII.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of four million, nine hundred forty thousand dollars ($4,940,000) is entered in favor of the Plaintiffs against the Defendants, jointly and severally, as equitable monetary relief.

B.    Defendants are ordered to pay to the Commission one hundred eighteen thousand dollars ($118,000).  Such payment must be made within sixty (60) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

C.    The Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements, deposition testimony, and related documents (collectively, "financial statements") submitted to Plaintiffs, namely:

1.    the Financial Statement of the Individual Defendant signed on December 19, 2018, including the attachments;

2.     the deposition of the Individual Defendant and the Corporate Defendant on August 29, 2018;

3.     the Financial Statements, including the attachments, of the Corporate Defendant, signed by Individual Defendant on July 9, 2018; and

4.     Individual Defendant's 2014, 2015, and 2016 federal and New York tax returns submitted electronically on August 7, 2018.

D.     The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Plaintiffs, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

E.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

F.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

G.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or the NY AG, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

17

H.   The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission or the NY AG pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

I.   Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

J.   All money paid to the Plaintiffs pursuant to this Order may be deposited into a fund administered by the Plaintiffs or their designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If representatives of the Plaintiffs decide that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Plaintiffs may apply any remaining money for such other equitable relief (including consumer information remedies) as they determine to be related to Defendants' practices alleged in the Complaint. The Plaintiffs shall retain authority and sole discretion over the division among Plaintiffs of any funds not used for equitable relief. Any money paid to the Commission not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Any money paid to the State of New York not used for equitable relief may be used to the full extent authorized by the State of New York's laws, including but not limited to, as payment for the State of New York's

costs of investigating and litigating the instant case. Defendants have no right to challenge any actions the Plaintiffs or their representatives may take pursuant to this Subsection.

## VIII.

## COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of Plaintiffs in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendant must appear and Corporate Defendant must cause Corporate Defendant's officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Plaintiffs' representative may request upon 5 days written notice, or other reasonable notice, at such places and times as a Plaintiff representative may designate, without the service of a subpoena.

## IX.

## ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to the Commission and the NY AG an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 10 years after entry of this Order, Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant

must deliver a copy of this Order to: (1) all principals, officers, directors, and

LLC managers and members: (2) all employees, agents, payment processors, and

representatives who participate in conduct related to the subject matter of the

Order; and (3) any business entity resulting from any change in structure as set

forth in the Section titled Compliance Reporting.  Delivery must occur within 7

days of entry of this Order for current personnel.  For all others, delivery must

occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this

Order, that Defendant must obtain, within 30 days, a signed and dated

acknowledgment of receipt of this Order.

## X.

## COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to Plaintiffs:

A.    One year after entry of this Order, each Defendant must submit a compliance

report, sworn under penalty of perjury:

1.    Each Defendant must:  (a) identify the primary physical, postal, and email

address and telephone number, as designated points of contact, which

representatives of the Plaintiffs may use to communicate with Defendant:

(b) identify all of that Defendant's businesses by all of their names,

telephone numbers, and physical, postal, email, and Internet addresses; (c)

describe the activities of each business, including the goods and services

offered, the means of advertising, marketing, and sales, and the

involvement of any other Defendant (which Individual Defendant must

describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.   Additionally, Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.   Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Defendant must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Hylan Asset Management, LLC, et al., X180037. Unless otherwise directed by a NY AG representative in writing, all submissions to the NY AG pursuant to this Order must be emailed to

christopher.boyd@ag.ny.gov or sent by overnight courier (not the U.S. Postal

Service) to: Bureau of Consumer Frauds, New York State Office of the Attorney

General, 350 Main Street, Suite 300A, Buffalo, New York 14202. The subject

line must begin:  FTC v. Hylan Asset Management, LLC, et al.

## XI.

## **RECORDKEEPING**

IT IS FURTHER ORDERED that Defendants must create certain records for 20 years

after entry of the Order, and retain each such record for 5 years. Specifically, Corporate

Defendant and Individual Defendant for any business that such Defendant, individually or

collectively with any other Defendant, is a majority owner or controls directly or indirectly, must

create and retain the following records:

A.     accounting records showing the revenues from all business activity;

B.     personnel records showing, for each Person providing services, whether as an

employee or otherwise, that Person's:  name; addresses; telephone numbers; job

title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly

or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this

Order, including all submissions to Plaintiffs;

E.     copies of all contracts with payment processors; and

F.     a copy of each unique advertisement or other marketing material.

## XII.

### COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.   Within 14 days of receipt of a written request from a representative of the Plaintiffs, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the Plaintiffs are authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Plaintiffs to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.   The Plaintiffs may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Plaintiffs, any consumer reporting

agency must furnish consumer reports concerning Individual Defendant, pursuant to

Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIII.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

SO ORDERED this ___ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

25

SO STIPULATED AND AGREED:

FOR PLAINTIFFS:

MICHAEL WHITE
MATTHEW J. WILSHIRE
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Telephone: (202) 326-2976 (Wilshire)
Telephone: (202) 326-3196 (White)
Facsimile: 202-326-3768
Email: mwhite1@ftc.gov;
mwilshire@ftc.gov

Attorneys for Plaintiff Federal Trade
Commission

LETITIA JAMES
Attorney General of the
State of New York

CHRISTOPHER L. BOYD
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Telephone: (716) 853-8457
Email: Christopher.Boyd@ag.ny.gov

Attorney for Plaintiff the People of the
State of New York

FOR DEFENDANTS:

DAVID PELTAN
Peltan Law, PLLC
128 Church Street
East Aurora, NY 14052
Telephone: (716) 374-5431
Email: davidpeltan@peltanlaw.com

Attorney for Defendants Frank A. Ungaro,
Jr. and Worldwide Processing Group, LLC
also d/b/a Forward Movement Recovery,
and also d/b a FMR

DEFENDANTS:

FRANK A. UNGARO, JR.
Individually and as an officer of Worldwide
Processing Group, LLC also d/b/a Forward
Movement Recovery, and also d/b/a FMR

26

# Attachment A

# Fair Debt Collection Practices Act
# 15 U.S.C. §§ 1692-1692p

§ 1691f                     TITLE 15—COMMERCE AND TRADE                     Page 1498

Subsec. (g). Pub. L. 111–203, §1085(6), substituted ''(9)'' for ''(3)''.

1991—Subsec. (g). Pub. L. 102–242, §223(a), inserted at end ''Each agency referred to in paragraphs (1), (2), and (3) of section 1691c(a) of this title shall refer the matter to the Attorney General whenever the agency has reason to believe that 1 or more creditors has engaged in a pattern or practice of discouraging or denying applications for credit in violation of section 1691(a) of this title. Each such agency may refer the matter to the Attorney General whenever the agency has reason to believe that 1 or more creditors has violated section 1691(a) of this title.''

Subsec. (h). Pub. L. 102–242, §223(b), inserted ''actual and punitive damages and'' after ''be appropriate, including''.

Subsec. (k). Pub. L. 102–242, §223(c), added subsec. (k).

1976—Subsec. (a). Pub. L. 94–239 substituted reference to member for reference to representative.

Subsec. (b). Pub. L. 94–239 inserted provisions exempting government or governmental subdivision or agency from requirements of this subchapter, incorporated provisions contained in former subsec. (c) relating to recovery in class actions and, as incorporated, raised the total amount of recovery under a class action from $100,000 to $500,000.

Subsec. (c). Pub. L. 94–239 redesignated subsec. (d) as (c) and specified United States district court or other court of competent jurisdiction as court in which to bring action, and substituted provisions authorizing such court to grant equitable and declaratory relief, for provisions authorizing civil actions for preventive relief. Provisions of former subsec. (c) were incorporated into present subsec. (b) and amended.

Subsec. (d). Pub. L. 94–239 redesignated subsec. (e) as (d) and made minor changes in phraseology. Former subsec. (d) redesignated (c) and amended.

Subsec. (e). Pub. L. 94–239 redesignated subsec. (f) as (e) and inserted reference to officially promulgated rule, regulation, or interpretation and provisions relating to approval and interpretations by an official or employee of the Federal Reserve System duly authorized by the Board. Former subsec. (e) redesignated (d) and amended.

Subsec. (f). Pub. L. 94–239 redesignated subsec. (g) as (f) and inserted provisions which substituted a two year limitation for one year limitation and provisions extending time in which to bring action under enumerated conditions. Former subsec. (f) redesignated (e) and amended.

Subsecs. (g) to (j). Pub. L. 94–239 added subsecs. (g) to (j). Former subsec. (g) redesignated (f) and amended.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by Pub. L. 94–239 effective Mar. 23, 1976, see section 708 of Pub. L. 90–321, set out as an Effective Date note under section 1691 of this title.

§ 1691f. Annual reports to Congress; contents

Each year, the Bureau and the Attorney General shall, respectively, make reports to the Congress concerning the administration of their functions under this subchapter, including such recommendations as the Bureau and the Attorney General, respectively, deem necessary or appropriate. In addition, each report of the Bureau shall include its assessment of the extent to which compliance with the requirements of this subchapter is being achieved, and a summary of the enforcement actions taken by each of the agencies assigned administrative enforcement responsibilities under section 1691c of this title.

(Pub. L. 90–321, title VII, §707, as added Pub. L. 94–239, §7, Mar. 23, 1976, 90 Stat. 255; amended Pub. L. 96–221, title VI, §610(c), Mar. 31, 1980, 94 Stat. 174; Pub. L. 111–203, title X, §1085(1), July 21, 2010, 124 Stat. 2083.)

AMENDMENTS

2010—Pub. L. 111–203 substituted ''Bureau'' for ''Board'' wherever appearing.

1980—Pub. L. 96–221 substituted ''Each year'' for ''Not later than February 1 of each year after 1976''.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–221 effective on expiration of two years and six months after Mar. 31, 1980, with all regulations, forms, and clauses required to be prescribed to be promulgated at least one year prior to such effective date, and allowing any creditor to comply with any amendments, in accordance with the regulations, forms, and clauses prescribed by the Board prior to such effective date, see section 625 of Pub. L. 96–221, set out as a note under section 1602 of this title.

EFFECTIVE DATE

Section effective Mar. 23, 1976, see section 708 of Pub. L. 90–321, set out as a note under section 1691 of this title.

## SUBCHAPTER V—DEBT COLLECTION PRACTICES

### § 1692. Congressional findings and declaration of purpose

#### (a) Abusive practices

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

#### (b) Inadequacy of laws

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

#### (c) Available non-abusive collection methods

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

#### (d) Interstate commerce

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

#### (e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

(Pub. L. 90–321, title VIII, § 802, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874.)

EFFECTIVE DATE

Pub. L. 90–321, title VIII, § 819, formerly § 818, as added by Pub. L. 95–109, Sept., 20, 1977, 91 Stat. 883, § 818; renumbered § 819, Pub. L. 109–351, title VIII, § 801(a)(1), Oct. 13, 2006, 120 Stat. 2004, provided that: "This title [enacting this subchapter] takes effect upon the expiration of six months after the date of its enactment [Sept. 20, 1977], but section 809 [section 1692g of this title] shall apply only with respect to debts for which the initial attempt to collect occurs after such effective date."

SHORT TITLE

This subchapter known as the "Fair Debt Collection Practices Act", see Short Title note set out under section 1601 of this title.

§ 1692a. Definitions

As used in this subchapter—

(1) The term "Bureau" means the Bureau of Consumer Financial Protection.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

(Pub. L. 90–321, title VIII, § 803, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 875; amended Pub. L. 99–361, July 9, 1986, 100 Stat. 768; Pub. L. 111–203, title X, § 1089(2), July 21, 2010, 124 Stat. 2092.)

AMENDMENTS

2010—Par. (1). Pub. L. 111–203 added par. (1) and struck out former par. (1) which read as follows: "The term 'Commission' means the Federal Trade Commission."

1986—Par. (6). Pub. L. 99–361 in provision preceding cl. (A) substituted "clause (F)" for "clause (G)", struck out cl. (F) which excluded any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client from term "debt collector", and redesignated cl. (G) as (F).

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

§ 1692b. Acquisition of location information

Any debt collector communicating with any person other than the consumer for the purpose

Case 1:18-cv-00710-EAW-JJM   Document 61   Filed 06/26/19   Page 30 of 38
Case 1:18-cv-00710-EAW-JJM   Document 58   Filed 06/20/19   Page 30 of 38

§ 1692c                    TITLE 15—COMMERCE AND TRADE                    Page 1500

of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

(Pub. L. 90–321, title VIII, § 804, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 876.)

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692c. Communication in connection with debt collection

### (a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

### (b) Communication with third parties

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

### (c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

### (d) "Consumer" defined

For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

(Pub. L. 90–321, title VIII, § 805, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 876.)

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692d. Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3)[1] of this title.

---

[1] See References in Text note below.

Case 1:18-cv-00710-EAW-JJM   Document 61   Filed 06/26/19   Page 31 of 38
Case 1:18-cv-00710-EAW-JJM   Document 58   Filed 06/20/19   Page 31 of 38

Page 1501                      TITLE 15—COMMERCE AND TRADE                      § 1692e

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

(Pub. L. 90–321, title VIII, §806, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877.)

REFERENCES IN TEXT

Section 1681b(3) of this title, referred to in par. (3), was redesignated section 1681b(a)(3) of this title by Pub. L. 104–208, div. A, title II, §2403(a)(1), Sept. 30, 1996, 110 Stat. 3009–430.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

(Pub. L. 90–321, title VIII, §807, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877; amended Pub. L. 104–208, div. A, title II, §2305(a), Sept. 30, 1996, 110 Stat. 3009–425.)

AMENDMENTS

1996—Par. (11). Pub. L. 104–208 amended par. (11) generally. Prior to amendment, par. (11) read as follows: "Except as otherwise provided for communications to acquire location information under section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–208, div. A, title II, §2305(b), Sept. 30, 1996, 110 Stat. 3009–425, provided that: "The amendment made by subsection (a) [amending this section] shall take effect 90 days after the date of enactment of this Act [Sept. 30, 1996] and shall apply to all communications made after that date of enactment."

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

(Pub. L. 90–321, title VIII, §808, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879.)

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692g. Validation of debts

#### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

#### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or the name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

#### (c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

#### (d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

#### (e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

(Pub. L. 90–321, title VIII, § 809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006.)

### REFERENCES IN TEXT

The Gramm-Leach-Bliley Act, referred to in subsec. (e), is Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1338. Title V of the Act is classified principally to chapter 94 (§ 6801 et seq.) of this title. For complete classification of this Act to the Code, see Short Title of 1999 Amendment note set out under section 1811 of Title 12, Banks and Banking, and Tables.

### AMENDMENTS

2006—Subsec. (b). Pub. L. 109–351, § 802(c), inserted at end "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

Subsec. (d). Pub. L. 109–351, § 802(a), added subsec. (d).

Subsec. (e). Pub. L. 109–351, § 802(b), added subsec. (e).

### EFFECTIVE DATE

Section applicable only with respect to debts for which the initial attempt to collect occurs after the effective date of this subchapter, which takes effect upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692h. Multiple debts

If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

(Pub. L. 90–321, title VIII, § 810, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692i. Legal actions by debt collectors

#### (a) Venue

Any debt collector who brings any legal action on a debt against any consumer shall—

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

#### (b) Authorization of actions

Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.

(Pub. L. 90–321, title VIII, § 811, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692j. Furnishing certain deceptive forms

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

(Pub. L. 90–321, title VIII, § 812, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692k. Civil liability

#### (a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

#### (b) Factors considered by court

In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

#### (c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

#### (d) Jurisdiction

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

#### (e) Advisory opinions of Bureau

No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(Pub. L. 90–321, title VIII, §813, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

AMENDMENTS

2010—Subsec. (e). Pub. L. 111–203 substituted "Bureau" for "Commission".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

#### § 1692*l*. Administrative enforcement

#### (a) Federal Trade Commission

The Federal Trade Commission shall be authorized to enforce compliance with this subchapter, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to another Government agency under any of paragraphs (1) through (5) of subsection (b), subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]. For purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. 41 et seq.), a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter, in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

#### (b) Applicable provisions of law

Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance with any requirements imposed under this subchapter shall be enforced under—

(1) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], by the appropriate Federal banking agency, as defined in section 3(q) of the Federal Deposit Insurance Act (12 U.S.C. 1813(q)), with respect to—

(A) national banks, Federal savings associations, and Federal branches and Federal agencies of foreign banks;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.]; and

(C) banks and State savings associations insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), and insured State branches of foreign banks;

(2) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(3) subtitle IV of title 49, by the Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board;

(4) part A of subtitle VII of title 49, by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that part;

(5) the Packers and Stockyards Act, 1921 [7 U.S.C. 181 et seq.] (except as provided in section 406 of that Act [7 U.S.C. 226, 227]), by the Secretary of Agriculture with respect to any activities subject to that Act; and

(6) subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau, with respect to any person subject to this subchapter.

The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).

#### (c) Agency powers

For the purpose of the exercise by any agency referred to in subsection (b) of its powers under

Case 1:18-cv-00710-EAW-JJM   Document 61   Filed 06/26/19   Page 35 of 38
Case 1:18-cv-00710-EAW-JJM   Document 58   Filed 06/20/19   Page 35 of 38

Page 1505                    TITLE 15—COMMERCE AND TRADE                    § 1692*l*

any Act referred to in that subsection, a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this subchapter any other authority conferred on it by law, except as provided in subsection (d).

**(d) Rules and regulations**

Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)], the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter.

(Pub. L. 90–321, title VIII, §814, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 98–443, §9(n), Oct. 4, 1984, 98 Stat. 1708; Pub. L. 101–73, title VII, §744(n), Aug. 9, 1989, 103 Stat. 440; Pub. L. 102–242, title II, §212(e), Dec. 19, 1991, 105 Stat. 2301; Pub. L. 102–550, title XVI, §1604(a)(8), Oct. 28, 1992, 106 Stat. 4082; Pub. L. 104–88, title III, §316, Dec. 29, 1995, 109 Stat. 949; Pub. L. 111–203, title X, §1089(3), (4), July 21, 2010, 124 Stat. 2092, 2093.)

REFERENCES IN TEXT

The Consumer Financial Protection Act of 2010, referred to in subsecs. (a) and (b), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§1021–1029A) and E (§§1051–1058) of the Act are classified generally to parts B (§5511 et seq.) and E (§5561 et seq.), respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

The Federal Trade Commission Act, referred to in subsec. (a), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

Sections 25 and 25A of the Federal Reserve Act, referred to in subsec. (b)(1)(B), are classified to subchapters I (§601 et seq.) and II (§611 et seq.), respectively, of chapter 6 of Title 12, Banks and Banking.

The Federal Credit Union Act, referred to in subsec. (b)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Packers and Stockyards Act, 1921, referred to in subsec. (b)(5), is act Aug. 15, 1921, ch. 64, 42 Stat. 159, which is classified generally to chapter 9 (§181 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 181 of Title 7 and Tables.

CODIFICATION

In subsec. (b)(3), "subtitle IV of title 49" substituted for "the Acts to regulate commerce" on authority of Pub. L. 95–473, §3(b), Oct. 17, 1978, 92 Stat. 1466, the first section of which enacted subtitle IV of Title 49, Transportation.

In subsec. (b)(4), "part A of subtitle VII of title 49" substituted for "the Federal Aviation Act of 1958 [49 App. U.S.C. 1301 et seq.]" and "that part" substituted for "that Act" on authority of Pub. L. 103–272, §6(b), July 5, 1994, 108 Stat. 1378, the first section of which enacted subtitles II, III, and V to X of Title 49.

Section 1089(4) of Pub. L. 111–203, which directed amendment "in subsection (d)" of the Fair Debt Collection Practices Act, was executed in subsec. (d) of this section, which is section 814 of the Act, to reflect the probable intent of Congress. See 2010 Amendment note below.

AMENDMENTS

2010—Subsec. (a). Pub. L. 111–203, §1089(3)(A), added subsec. (a) and struck out former subsec. (a). Prior to amendment, text read as follows: "Compliance with this subchapter shall be enforced by the Commission, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to another agency under subsection (b) of this section. For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act, a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule."

Subsec. (b). Pub. L. 111–203, §1089(3)(B)(i), substituted "Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance" for "Compliance" in introductory provisions.

Subsec. (b)(1). Pub. L. 111–203, §1089(3)(B)(ii), added par. (1) and struck out former par. (1) which read as follows: "section 8 of the Federal Deposit Insurance Act, in the case of—

"(A) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

"(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25(a) of the Federal Reserve Act, by the Board of Governors of the Federal Reserve System; and

"(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation;".

Subsec. (b)(2) to (6). Pub. L. 111–203, §1089(3)(B)(i)–(vi), added par. (6), redesignated former pars. (3) to (6) as (2) to (5), respectively, and struck out former par. (2) which read as follows: "section 8 of the Federal Deposit Insurance Act, by the Director of the Office of Thrift Supervision, in the case of a savings association the deposits of which are insured by the Federal Deposit Insurance Corporation;".

Subsec. (d). Pub. L. 111–203, §1089(4), substituted "Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010, the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter" for "Neither the Commission nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter". See Codification note above.

1995—Subsec. (b)(4). Pub. L. 104–88 substituted "Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board" for "Interstate Commerce Commission with respect to any common carrier subject to those Acts".

1992—Subsec. (b)(1)(C). Pub. L. 102–550 substituted semicolon for period at end.

1991—Subsec. (b). Pub. L. 102–242, §212(e)(2), inserted at end "The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C.

§ 1692m                     TITLE 15—COMMERCE AND TRADE                     Page 1506

1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101)."

Pub. L. 102–242, §212(e)(1), added par. (1) and struck out former par. (1) which read as follows: "section 8 of Federal Deposit Insurance Act, in the case of—

  "(A) national banks, by the Comptroller of the Currency;

  "(B) member banks of the Federal Reserve System (other than national banks), by the Federal Reserve Board; and

  "(C) banks the deposits or accounts of which are insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), by the Board of Directors of the Federal Deposit Insurance Corporation;".

1989—Subsec. (b)(2). Pub. L. 101–73 amended par. (2) generally. Prior to amendment, par. (2) read as follows: "section 5(d) of the Home Owners Loan Act of 1933, section 407 of the National Housing Act, and sections 6(i) and 17 of the Federal Home Loan Bank Act, by the Federal Home Loan Bank Board (acting directly or through the Federal Savings and Loan Insurance Corporation), in the case of any institution subject to any of those provisions;".

1984—Subsec. (b)(5). Pub. L. 98–443 substituted "Secretary of Transportation" for "Civil Aeronautics Board".

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

#### EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 1301 of Title 49, Transportation.

#### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–550 effective as if included in the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. 102–242, as of Dec. 19, 1991, see section 1609(a) of Pub. L. 102–550, set out as a note under section 191 of Title 12, Banks and Banking.

#### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–443 effective Jan. 1, 1985, see section 9(v) of Pub. L. 98–443, set out as a note under section 5314 of Title 5, Government Organization and Employees.

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

#### TRANSFER OF FUNCTIONS

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

### § 1692m. Reports to Congress by the Bureau; views of other Federal agencies

(a) Not later than one year after the effective date of this subchapter and at one-year intervals thereafter, the Bureau shall make reports to the Congress concerning the administration of its functions under this subchapter, including such recommendations as the Bureau deems necessary or appropriate. In addition, each report of the Bureau shall include its assessment of the extent to which compliance with this sub-

chapter is being achieved and a summary of the enforcement actions taken by the Bureau under section 1692l of this title.

(b) In the exercise of its functions under this subchapter, the Bureau may obtain upon request the views of any other Federal agency which exercises enforcement functions under section 1692l of this title.

(Pub. L. 90–321, title VIII, §815, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 882; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

#### REFERENCES IN TEXT

The effective date of this subchapter, referred to in subsec. (a), is the date occurring on expiration of six months after Sept. 20, 1977. See section 819 of Pub. L. 90–321, set out as an Effective Date note under section 1692 of this title.

#### AMENDMENTS

2010—Pub. L. 111–203 substituted "Bureau" for "Commission" wherever appearing.

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692n. Relation to State laws

This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

(Pub. L. 90–321, title VIII, §816, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 883.)

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692o. Exemption for State regulation

The Bureau shall by regulation exempt from the requirements of this subchapter any class of debt collection practices within any State if the Bureau determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement.

(Pub. L. 90–321, title VIII, §817, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 883; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

AMENDMENTS

2010—Pub. L. 111–203 substituted "Bureau" for "Commission" in two places.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692p. Exception for certain bad check enforcement programs operated by private entities

### (a) In general

#### (1) Treatment of certain private entities

Subject to paragraph (2), a private entity shall be excluded from the definition of a debt collector, pursuant to the exception provided in section 1692a(6) of this title, with respect to the operation by the entity of a program described in paragraph (2)(A) under a contract described in paragraph (2)(B).

#### (2) Conditions of applicability

Paragraph (1) shall apply if—

(A) a State or district attorney establishes, within the jurisdiction of such State or district attorney and with respect to alleged bad check violations that do not involve a check described in subsection (b), a pretrial diversion program for alleged bad check offenders who agree to participate voluntarily in such program to avoid criminal prosecution;

(B) a private entity, that is subject to an administrative support services contract with a State or district attorney and operates under the direction, supervision, and control of such State or district attorney, operates the pretrial diversion program described in subparagraph (A); and

(C) in the course of performing duties delegated to it by a State or district attorney under the contract, the private entity referred to in subparagraph (B)—

(i) complies with the penal laws of the State;

(ii) conforms with the terms of the contract and directives of the State or district attorney;

(iii) does not exercise independent prosecutorial discretion;

(iv) contacts any alleged offender referred to in subparagraph (A) for purposes of participating in a program referred to in such paragraph—

(I) only as a result of any determination by the State or district attorney that probable cause of a bad check violation under State penal law exists, and that contact with the alleged offender for purposes of participation in the program is appropriate; and

(II) the alleged offender has failed to pay the bad check after demand for payment, pursuant to State law, is made for payment of the check amount;

(v) includes as part of an initial written communication with an alleged offender a clear and conspicuous statement that—

(I) the alleged offender may dispute the validity of any alleged bad check violation;

(II) where the alleged offender knows, or has reasonable cause to believe, that the alleged bad check violation is the result of theft or forgery of the check, identity theft, or other fraud that is not the result of the conduct of the alleged offender, the alleged offender may file a crime report with the appropriate law enforcement agency; and

(III) if the alleged offender notifies the private entity or the district attorney in writing, not later than 30 days after being contacted for the first time pursuant to clause (iv), that there is a dispute pursuant to this subsection, before further restitution efforts are pursued, the district attorney or an employee of the district attorney authorized to make such a determination makes a determination that there is probable cause to believe that a crime has been committed; and

(vi) charges only fees in connection with services under the contract that have been authorized by the contract with the State or district attorney.

### (b) Certain checks excluded

A check is described in this subsection if the check involves, or is subsequently found to involve—

(1) a postdated check presented in connection with a payday loan, or other similar transaction, where the payee of the check knew that the issuer had insufficient funds at the time the check was made, drawn, or delivered;

(2) a stop payment order where the issuer acted in good faith and with reasonable cause in stopping payment on the check;

(3) a check dishonored because of an adjustment to the issuer's account by the financial institution holding such account without providing notice to the person at the time the check was made, drawn, or delivered;

(4) a check for partial payment of a debt where the payee had previously accepted partial payment for such debt;

(5) a check issued by a person who was not competent, or was not of legal age, to enter into a legal contractual obligation at the time the check was made, drawn, or delivered; or

(6) a check issued to pay an obligation arising from a transaction that was illegal in the jurisdiction of the State or district attorney at the time the check was made, drawn, or delivered.

### (c) Definitions

For purposes of this section, the following definitions shall apply:

#### (1) State or district attorney

The term "State or district attorney" means the chief elected or appointed prosecuting attorney in a district, county (as defined in sec-

tion 2 of title 1), municipality, or comparable jurisdiction, including State attorneys general who act as chief elected or appointed prosecuting attorneys in a district, county (as so defined), municipality or comparable jurisdiction, who may be referred to by a variety of titles such as district attorneys, prosecuting attorneys, commonwealth's attorneys, solicitors, county attorneys, and state's attorneys, and who are responsible for the prosecution of State crimes and violations of jurisdiction-specific local ordinances.

**(2) Check**

The term "check" has the same meaning as in section 5002(6) of title 12.

**(3) Bad check violation**

The term "bad check violation" means a violation of the applicable State criminal law relating to the writing of dishonored checks.

(Pub. L. 90–321, title VIII, §818, as added Pub. L. 109–351, title VIII, §801(a)(2), Oct. 13, 2006, 120 Stat. 2004.)

## SUBCHAPTER VI—ELECTRONIC FUND TRANSFERS

### § 1693. Congressional findings and declaration of purpose

**(a) Rights and liabilities undefined**

The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined.

**(b) Purposes**

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

(Pub. L. 90–321, title IX, §902, as added Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3728; amended Pub. L. 111–203, title X, §1073(a)(1), July 21, 2010, 124 Stat. 2060.)

AMENDMENTS

2010—Subsec. (b). Pub. L. 111–203 inserted "and remittance" after "electronic fund".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE

Pub. L. 90–321, title IX, §923, formerly §921, as added by Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3741, renumbered §922, Pub. L. 111–24, title IV, §401(1), May 22, 2009, 123 Stat. 1751; renumbered §923, Pub. L. 111–203, title X, §1073(a)(3), July 21, 2010, 124 Stat. 2060, provided that: "This title [enacting this subchapter] takes effect upon the expiration of eighteen months

from the date of its enactment [Nov. 10, 1978], except that sections 909 and 911 [sections 1693g, 1693i of this title] take effect upon the expiration of ninety days after the date of enactment."

[Pub. L. 111–203, §1073(a)(3), which directed renumbering of section 922 of Pub. L. 90–321 as section 923 effective 1 day after July 21, 2010, was executed after the renumbering of section 921 of Pub. L. 90–321 as section 922 by Pub. L. 111–24, §401(1), effective 15 months after May 22, 2009, to reflect the probable intent of Congress.]

SHORT TITLE

This subchapter known as the "Electronic Fund Transfer Act", see Short Title note set out under section 1601 of this title.

### § 1693a. Definitions

As used in this subchapter—

(1) the term "accepted card or other means of access" means a card, code, or other means of access to a consumer's account for the purpose of initiating electronic fund transfers when the person to whom such card or other means of access was issued has requested and received or has signed or has used, or authorized another to use, such card or other means of access for the purpose of transferring money between accounts or obtaining money, property, labor, or services;

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i)[1] of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

(4)[2] the term "Board" means the Board of Governors of the Federal Reserve System;

(4)[2] the term "Bureau" means the Bureau of Consumer Financial Protection;

(5) the term "business day" means any day on which the offices of the consumer's financial institution involved in an electronic fund transfer are open to the public for carrying on substantially all of its business functions;

(6) the term "consumer" means a natural person;

(7) the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include—

(A) any check guarantee or authorization service which does not directly result in a debit or credit to a consumer's account;[3]

(B) any transfer of funds, other than those processed by automated clearinghouse, made

---

[1] See References in Text note below.

[2] So in original. There are two pars. designated "(4)" and no par. (3).

[3] So in original. The colon probably should be a semicolon.